**Pedro Pablo HIDALGO–DISLA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Docket 94–4179.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 4, 1995.

Decided April 12, 1995.

. Pedro P. Hidalgo–Disla, Oakdale, LA, pro se.

Janet Reno, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, DC, William Slattery, Immigration & Naturalization Service, Office of District Director, Diogenes P. Kekatos, U.S. Attorney's Office, Civil Division, Appellate Unit S.D.N.Y., New York City, for I.N.S.

Before: WINTER, MAHONEY and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

This motion prompts us to consider the circumstances under which an appeal may be dismissed as frivolous without benefit of full briefing and argument.

Petitioner Pedro Pablo Hidalgo–Disla, a 54–year–old native and citizen of the Dominican Republic, moves *pro se* for leave to proceed *in forma pauperis* on his petition before this Court. The petition seeks review of the September 12, 1994 order of the Board of Immigration Appeals ("BIA"), which affirms the decision of the Immigration Judge ("IJ") finding Hidalgo–Disla deportable. The IJ denied him discretionary relief under section 212(c) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(c) ("section 212(c)"), and ordered him deported to the Dominican Republic.

We find no reason to question petitioner's claim of poverty and therefore grant *in forma pauperis* status. However, because his appeal lacks any legal merit, we dismiss it as

frivolous pursuant to 28 U.S.C. § 1915(d). *See Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## BACKGROUND

Hidalgo–Disla entered the United States as a visitor on June 22, 1981. After his marriage to an American citizen, his status was adjusted to that of lawful permanent resident on November 15, 1983. On June 1, 1990, he was convicted of possession with intent to distribute more than one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1). The United States District Court for the District of Kansas sentenced him to a prison term of 63 months. Based on this conviction, the INS sought to classify the petitioner as deportable as an alien convicted of an aggravated felony, pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii).

Hidalgo–Disla was brought before Immigration Judge R.K. McHugh in Oakdale, Louisiana on April 20, 1994. The IJ described the nature of the deportation proceeding, advised Hidalgo–Disla of the government's intention to return him to the Dominican Republic, and then advised him of his various rights during the immigration proceeding, including his right to appear by counsel:

> First of all, you have the right to have an attorney represent you at no expense to the Government. Previously, you should have received—well, at this time, we'll give you a copy of the legal aid list which is a list of attorneys in the area that may be willing to assist you for little or no fee.

Administrative Record at 44.[1] The IJ then asked Hidalgo–Disla if he wished to proceed without a representative:

> Now, this is your first time in proceedings, and if you desire more time to prepare your case or look for an attorney, you may have more time or you may have your hearing today.

*Id.* Hidalgo–Disla responded that he wished more time; the hearing was accordingly adjourned.

Hidalgo–Disla arrived at his second scheduled hearing on May 2, 1994, again without representation. The following exchange took place between the IJ and Hidalgo–Disla:

> Q. Mr. Hidalgo, the last time we were here, you were going to look for an attorney. Have you been successful in this attempt?
>
> A. I tried to get in touch with my family, but I haven't gotten in touch with them yet. If I can get another appointment.
>
> Q. Okay. What I'm going to do is, I'm going to put your case off until the 16th of May, 1994.
>
> A. Okay.
>
> Q. And that will be 2 o'clock in the afternoon. Okay. *Now, you should understand that this will probably be the last time we can continue this case. You should be ready to proceed with or without an attorney that day. Okay?*
>
> A. *Okay.*

*Id.* at 46–47 (emphasis added).

Hidalgo–Disla appeared before the IJ for the third time on May 16, 1994:

> Q. Okay. Mr. Hidalgo, the last two times we were here, you were going to look for an attorney. Have you been successful, sir?
>
> A. I'm not find one. I've not been able to get in touch with my family.
>
> Q. Okay. Let me ask you, sir, to raise your right hand. Do you swear the testimony you are about to give today shall be the truth, the whole truth and nothing but the truth so help you God?
>
> A. Yes.

*Id.* at 49. Thus, before the INS proceeding against Hidalgo–Disla was permitted to go forward, he was repeatedly reminded of his

---

1. Hidalgo–Disla had initially been advised of these rights through the "Notice of Hearing in Deportation Proceeding" sent to him on March 28, 1994 to inform him of the scheduling of his April 20, 1994 hearing. The Notice read in pertinent part:

> You may be represented in this proceeding at no expense to the Federal Government by an attorney or other individual authorized to represent persons in these proceedings. Your attorney or representative should appear with you at the scheduled hearing.

Administrative Record at 95.

right to have representation and was given opportunities to retain counsel.

At the May 16 hearing Hidalgo–Disla conceded before the IJ that he was a citizen of the Dominican Republic and had been convicted of possession with intent to distribute cocaine. The IJ then found him to be deportable. *Id.* at 50. The IJ adjourned the proceeding to permit Hidalgo–Disla to prepare a request for § 212(c) discretionary waiver of deportation.

The § 212(c) waiver hearing was held on June 16, 1994, after which the IJ issued an oral opinion. The IJ noted that Hidalgo–Disla has four children residing in the United States, ranging in age from 27 to 8. *Id.* at 33–34. The court also noted that Hidalgo–Disla gave authorities an alias when he was arrested on the drug possession charge, and was "untruthful" at his hearing. *Id.* at 35. Concluding that Hidalgo–Disla's "negatives far outweigh the positives" and that "although there is ... hardship, it is not one that cannot be overcome," the IJ denied § 212(c) relief. *Id.* at 39.

On administrative appeal, Hidalgo–Disla presented numerous claims of error to the BIA, including the assertion that he did not knowingly and voluntarily waive his right to counsel in proceedings before the IJ. *Id.* at 14. In dismissing the appeal, the BIA recorded:

> we find [Hidalgo–Disla] was given sufficient time to ensure an attorney appeared with him at the deportation proceedings and he failed to do so. Furthermore, we find he was not prejudiced by appearing without an attorney. The immigration judge took great pains to ensure that [Hidalgo–Disla's] rights were protected and that he was given a fair hearing.

*Id.* at 2.

Hidalgo–Disla timely filed a petition for review in this court as well as a motion for leave to proceed *in forma pauperis*.

## DISCUSSION

A. In forma pauperis *status*.

Under 28 U.S.C. § 1915(a),

> Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

Hidalgo–Disla attached an affidavit to his motion for leave to proceed *in forma pauperis*. As his only employment, he listed his prison job for which he receives $1.15 per week. He stated that he had no assets and no other sources of income.

In *Potnick v. Eastern State Hospital,* 701 F.2d 243 (2d Cir.1983) (*per curiam* ), we noted that "[s]ection 1915(a) does not require a litigant to demonstrate absolute destitution; no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life." *Id.* at 244. Hidalgo–Disla lacks the assets and income required to pay the filing fee. We, therefore, grant him *in forma pauperis* status.

B. *Frivolousness.*

In 1892, Congress enacted the *in forma pauperis* statute, currently codified at 28 U.S.C. § 1915, "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). By the same token, however, forgiveness of the filing fee removes a marginal disincentive to frivolous and harassing litigation. As a check on such abuses, § 1915 contemplates that courts will take affirmative steps to weed out abusive filings and proceedings:

> Congress recognized ... that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. To prevent such abusive or captious litigation, § 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* "if the allegation of poverty is untrue, or if satisfied that the action

is frivolous or malicious." Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.

*Id.* Therefore, our grant of *in forma pauperis* status does not end our inquiry in this appeal.

■ A complaint is "frivolous" under § 1915(d) where "[none] of the legal points [are] arguable on their merits." *Pillay v. INS,* 45 F.3d 14, 16 (2d Cir.1995) (*per curiam* ) (quoting *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831 (alterations in *Neitzke* )). The "term 'frivolous' ... embraces ... the inarguable legal conclusion." *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1832.

Our procedure for ascertaining frivolousness is not visceral; it entails some consideration of each claim and, where justified, research and analysis. Although the vast majority of the claims presented by Hidalgo–Disla to the BIA do not justify discussion, we publish our consideration of Hidalgo–Disla's waiver-of-counsel challenge in order to disclose our evaluative procedures. We conclude that, although Hidalgo–Disla's challenge justifies detailed evaluation, it nevertheless cannot be argued in good faith on the merits, and is therefore dismissed as frivolous.

The Code of Federal Regulations affords a deportable alien the right to counsel of his own choice *and at his own expense,* to assist at deportation proceedings. 8 C.F.R. §§ 242.10, 242.16(a). In order to ensure that the alien is aware of this right, the immigration judge is required to "advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings *and require him to state then and there whether he desires representation ...*" 8 C.F.R. § 242.16(a) (emphasis added).

In this case, the immigration judge advised Hidalgo–Disla of his right to counsel at the initial hearing, which was adjourned, *and* at the adjourned date, which led to a second adjournment. On the second hearing date the immigration judge expressly warned Hidalgo–Disla that he should be prepared to proceed, with or without a representative, when he arrived for the May 16, 1994 hearing. We do not view as error the fact that the immigration judge proceeded with the hearing on the third occasion without again questioning Hidalgo–Disla as to whether he wished representation. If an immigration judge could not proceed with a hearing, after two adjournments, without the alien's express waiver, an alien seeking to stave off deportation would be able to win an infinite number of adjournments, and would be better off appearing *without* a lawyer than with one. The Code of Federal Regulations does not mandate this kind of wheel-spinning. Hidalgo–Disla has therefore failed to present a legal position that is arguable on the merits.

In arriving at that conclusion, we have searched for law that could furnish grounds for debate. In *Montilla v. INS,* 926 F.2d 162 (2d Cir.1991), a two-judge majority of a panel of this court (over a dissent by Judge Miner) found that an alien had not waived his right to representation when, after one adjournment, he was not again reminded of his right to have representation. *Montilla* does not reflect any consideration of what should happen when (as here) the alien is repeatedly advised of his rights and repeatedly appears without representation. *Montilla* recognizes that the purpose of the relevant INS regulation is to force the alien "to confront th[e] choice" of whether or not to be represented. *Id.* at 166. Hidalgo–Disla was confronted with the choice as mandated in *Montilla.* That choice, however, is: counsel or no counsel. The choice is not: hearing or no hearing. Nothing in *Montilla* compels us to delay the recognition at this juncture that Hidalgo–Disla's appeal is frivolous. The appeal is dismissed.